## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

IN RE:    JOHN A. LITTLE, III,                    Case No. 4:20-bk-11199J
                                                          (Chapter 13)

                        Debtor.

## MEMORANDUM OPINION AND ORDER
## OVERRULING IN PART AND SUSTAINING IN PART
## AMENDED LIMITED OBJECTION TO CLAIM

This matter involves a dispute between John A. Little, III (the "**Debtor**") and the State of

Arkansas Office of Child Support Enforcement ("**OCSE**") concerning what amount the Debtor

will be required to pay during the life of his confirmed plan on a prepetition judgment for child

support arrearages.  The dispute is before the Court on the Debtor's *Amended Limited Objection*

*to Claims #15-1, #15-2, and #16, filed by State of Arkansas OCSE, with Notice of Opportunity to*

*Respond* (the "**Limited Objection**") (Doc. No. 107), filed on February 22, 2021, and OCSE's

*Response to Limited Objection to Claims* (the "**Response**") (Doc. No. 110), filed on March 15,

2021.

The Limited Objection and Response were set for telephonic hearing[1] on April 21, 2021.

Ms. Amanda R. Ray of the Danecki Law Firm, P.L.C., appeared on behalf of the Debtor.  The

Debtor also appeared and testified.  Mr. Holt Niven Short appeared on behalf of OCSE.  Ms.

Kiesha Green, a representative of OCSE, also appeared and testified.  At the close of the hearing

the Court gave counsel an opportunity to submit post-hearing briefs.  On May 14, 2021, OCSE

---

[1] In light of the ongoing COVID-19 pandemic, and pursuant to the Administrative Order of the Court dated
March 16, 2020, the Court was not conducting "in court" hearings on April 21, 2021.  The Administrative Order can
be found at:
https://www.areb.uscourts.gov/sites/arb/files/Bankruptcy%20Court%20Administrative%20Order%20March%2016
%202020.pdf.

filed a post-hearing brief in support of its position (Doc. No. 114).  The Debtor elected to not file

a brief, and the matter was taken under advisement.  For the reasons stated below, the Court finds

the Limited Objection is overruled in part and sustained in part.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).  The following shall constitute the

Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy

Procedure 7052, made applicable to this contested matter by Federal Rule of Bankruptcy

Procedure 9014.

## II. Facts

Prepetition, on November 14, 2016, the Circuit Court of Pulaski County, Arkansas

entered an *Order of Paternity and Support* (the "**Paternity Order**") in the domestic relations

case of *Misty Price vs. John Little, III*, Case No. 60DR2015-1147.  Pursuant to the Paternity

Order, the Debtor was ordered to pay $350.00 per month as child support for his minor child, and

the Plaintiff, Misty Price, was awarded a judgment for retroactive child support in the amount of

$12,158.00.  The Debtor was ordered to pay the retroactive judgment at the rate of $70.00 per

month, in addition to the $350.00 monthly child support obligation, for a total monthly payment

of $420.00.

The Debtor became delinquent on his child support payments.  OCSE intervened in the

domestic relations case, and on July 2, 2019, the Circuit Court of Pulaski County, Arkansas

entered an *Agreed Judgment and Order* (the "**Agreed Judgment**").  Pursuant to the Agreed

Judgment, Misty Price and OCSE were granted a judgment in the amount of $15,478.00,

consisting of $12,018.00 owed on the prior child support judgment, plus unadjudicated arrears of

$3,460.00 from November 14, 2016 through June 30, 2019.  The Agreed Judgment provided that the Debtor "shall continue to pay $420.00 Monthly, which includes current child support of $350.00 Monthly plus an additional $70.00 Monthly toward the judgment."  (Debtor's Ex. C, ¶ 4).  The Agreed Judgment further provided that the child support obligation would terminate as provided in Ark. Code Ann. § 9-4-237, and that pursuant to Ark. Code Ann. § 9-14-218(a)(1) certain deductions could be made from the Debtor's wages, including a deduction for the full amount of past due support from any lump-sum payment, not to exceed fifty percent of the net lump-sum payment.  (Debtor's Ex. C, ¶ 6–7).  The parties referred to the $15,478.00 judgment awarded in the Agreed Judgment as the "**Adjudicated Arrearage**," and this Court will do the same.

After the Agreed Judgment was entered, but before filing his bankruptcy petition, the Debtor again became delinquent on his child support payments in the amount of $960.00.  The parties referred to the $960.00 arrearage as the "**Unadjudicated Arrearage**," and this Court will do the same.

On March 4, 2020, the Debtor filed a voluntary petition for relief under the provisions of Chapter 13 of the United States Bankruptcy Code.  The general deadline for filing proofs of claim was set for May 13, 2020, and the deadline for governmental units to file proofs of claim was set for August 31, 2020.  The Debtor filed his original plan with his bankruptcy petition.  He later amended his plan on May 13, 2020, following an objection by the Trustee.

On May 29, 2020, Mr. Short entered an appearance in the case on behalf of OCSE.  That same day, OCSE filed a proof of claim, designated as Claim No. 15-1 on the Court's claims

register, and objected to confirmation of the Debtor's amended plan.[2]  In its proof of claim,

OCSE listed a total claim amount of $16,438.00, representing the Adjudicated Arrearage and

Unadjudicated Arrearage.  Of that amount, $1,475.00 was listed as secured, and the remaining

$14,963.00 was listed as a priority unsecured claim under Section 507(a)(1) of the Bankruptcy

Code.  On June 16, 2020, the Debtor again amended his plan, modifying the treatment of

OCSE's claim.

On June 25, 2020, the Debtor filed his fourth and final plan.  In this plan, the Debtor

provided treatment for OCSE's secured claim in the amount of $1,475.00, proposing to pay it in

full during the sixty-month plan.  In Section 4.1 of the plan, which governs the general treatment

of priority claims, the plan provided that "Trustee's fees and all allowed priority claims,

including domestic support obligations, will be paid in full without postpetition interest."[3]

(Debtor's Ex. D).  Section 4.5 of the plan further provided as follows:

> The name(s) and address(es) of the holder of any domestic support obligation are
> as follows.  *See* 11 U.S.C. §§ 101(14A) and 1302(b)(6). ***If joint debtors, indicate
> which debtor has a domestic support obligation.* ***

| Name and address of holder | Paid to | Name of debtor obligated |
|---|---|---|
| **Office of Child Support Enforcement Pre-Petition Non-adjudicated arrears.** | ☐Holder ☒Governmental unit, below | **John A. Little, III** |
| **Office of Child Support Enforcement Pre-Petition adjudicated arrearage being paid with debtor's current obligation at the rate of $70.00 per month per Agreed Judgment and Order.** | ☐Holder ☒Governmental unit, below | **John A. Little, III** |

---

[2] The Court takes judicial notice of Claim No. 15-1.  At the hearing, the Court took judicial notice of OCSE's
objection to confirmation filed on May 29, 2020.  The issues raised by OCSE in its objection of May 29, 2020, are
not the same issues currently before the Court.
[3] This language is part of the standard form language in the *Arkansas Chapter 13 Plan* (Local Form 13-1).

4

| Office of Child Support Enforcement Child Support – Current Obligation of $350/month plus $70/month to be applied to adjudicated arrears per Agreed Judgment and Order. | ☐Holder ☒Governmental unit, below | John A. Little, III |
|---|---|---|

The following domestic support obligation claims are assigned to, owed to, or recoverable by a governmental unit.

| Name and address of the governmental unit | Holder of the domestic support obligation | Name of debtor obligated |
|---|---|---|
| -NONE- | | |

**Continuing domestic support obligation payment.**

☐The regular monthly support payment shall be paid by the debtor(s) directly and is included on Schedules I or J.

☒The regular domestic support obligation monthly payment of $ **420.00** shall be paid by the trustee as a continuing debt.

**Domestic support obligation arrearage payment.**

☒The domestic support obligation arrearage claim will be paid by the trustee as listed below.  Unless otherwise ordered by the court, the arrearage claim amount listed on the filed and allowed proof of claim will control over the total estimated arrearage amount listed below.

| Name and address of creditor | Total estimated arrearage amount | Monthly arrearage payment |
|---|---|---|
| Office of Child Support Enforcement Pre-Petition Non-adjudicated arrears. | 960.00 | 16.00 |

(Debtor's Ex. D).  On July 21, 2020, OCSE withdrew its previous objection to confirmation of

the Debtor's plan.  On August 10, 2020, the Debtor's fourth plan was confirmed.

On November 10, 2020, the Debtor filed a limited objection to OCSE's Claim No. 15-1.

The Debtor explained in his objection that OCSE garnished funds from the Debtor postpetition in

the approximate amount of $3,216.00, and that the proof of claim should be reduced accordingly. OCSE responded to the objection, and the parties resolved their dispute by OCSE amending its claim and the Debtor withdrawing his objection.

OCSE's amended proof of claim was filed on December 18, 2020, and was designated as Claim No. 15-2 in the Court's claims register. In Claim No. 15-2, OCSE listed a reduced claim amount of $13,595.41, and designated the entire amount as a priority unsecured claim under Section 507(a)(1) of the Bankruptcy Code. The amount is comprised of both the Adjudicated Arrearage and Unadjudicated Arrearage, less funds received by OCSE through postpetition garnishment. The basis of the claim is listed as "Pre-Petition DSO arrears assigned by Misty Price." (Claim No. 15-2).

On December 18, 2020, OCSE also filed an additional claim, designated as Claim No. 16-1 in the Court's claims register. In Claim No. 16-1, OCSE listed a total claim amount of $21,000.00, representing the Debtor's ongoing, postpetition domestic support obligation payment in the amount of $350.00 per month for 60 months. It was filed as a priority unsecured claim under Section 507(a)(1) of the Bankruptcy Code.

On February 22, 2021, the Debtor filed his Limited Objection, objecting to OCSE's Claim No. 15-2 and Claim No. 16-1.[4]

### III. Arguments

As it concerns Claim No. 15-2, the Debtor does not object to the amount of the claim or the classification of the claim as a priority unsecured claim. The parties do not dispute that the debt qualifies as a domestic support obligation. Rather, the Debtor argues the claim, as filed,

---

[4] As previously mentioned, the Debtor's Limited Objection also contained an objection to Claim No. 15-1. Because the filing of Claim No. 15-2 superseded Claim 15-1, the Court's analysis in this Opinion will focus solely on Claim 15-2.

indicates to the Trustee that the full $13,595.41 will have to be paid in the Debtor's case, which the Debtor argues contradicts the terms of both the Agreed Judgment and the confirmed plan. He asks the Court to order OCSE to amend Claim No. 15-2 to clarify that the only arrearages to be paid to OCSE during the plan are the $960.00 Unadjudicated Arrearage, plus $70.00 per month on the Adjudicated Arrearage. As it concerns Claim No. 16-1, the Debtor argues this claim was untimely filed and should be disallowed.

OCSE responds that the Bankruptcy Court is not bound by the payment terms contained in the Agreed Judgment, but instead must look to how the Bankruptcy Code treats domestic support obligations. It argues Claim No. 15-2 is properly filed as a priority unsecured claim and, as such, it is entitled to payment in full during the plan. OCSE further argues that the confirmed plan supports its position because Section 4.5 of the confirmed plan provides that the proof of claim amount will control over the estimated amount listed by the Debtor. As to Claim No. 16-1, OCSE argues that the claim for the ongoing domestic support obligation payment was filed "to clarify some confusion with the Trustee's office." (Tr. at 62).

## IV. Discussion

The matter before the Court is an objection to claim. Under the Bankruptcy Code, a proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). If an objection is filed, the court is to determine the amount of such claim and must allow the claim unless one of nine enumerated exceptions found in Section 502(b) applies. 11 U.S.C. § 502(b); *see also Sears v. Sears (In re Sears)*, 863 F.3d 973, 977 (8th Cir. 2017). As explained by the Eighth Circuit Bankruptcy Appellate Panel, "Section 502(b) sets forth the sole grounds for objecting to a claim." *Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 147, 150 (B.A.P. 8th Cir. 2004).

7

A properly filed proof of claim constitutes "prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). "The burden of proof then shifts to the objector to establish that the claim fits within one of the exceptions set forth in Section 502(b) of the Bankruptcy Code." *Dove-Nation*, 318 B.R. at 152 (citing *Kimmons v. Innovative Software Designs, Inc. (In re Innovative Software Designs, Inc.)*, 253 B.R. 40, 44 (B.A.P. 8th Cir. 2000); *Consumers Realty & Dev. Co. v. Goetze (In re Consumers Realty & Dev. Co.)*, 238 B.R. 418, 422–423 (B.A.P. 8th Cir. 1999)). If the proof of claim is not entitled to prima facie validity, it is still "some evidence" of the claim, and the objector "must come forward with 'some evidence to meet, overcome, or at least equalize the statements on the proof of claim.'" *In re Muller*, 479 B.R. 508, 514 (Bankr. W.D. Ark. 2012) (quoting *In re Cluff*, 313 B.R. 323, 340 (Bankr. D. Utah 2004), *aff'd sub nom. Cluff v. ECast Settlement*, No. 2:04-CV-978, 2006 WL 282005 (D. Utah Sept. 29, 2006)). In either case, if the objector presents evidence supporting its objection to claim, "the ultimate burden of persuasion [then] shift[s] to the Claimant to establish its entitlement to the claim[]." *Dove-Nation*, 318 B.R. at 152.

### A.  Objection to Claim No. 15-2

The Court will take up the objection to Claim No. 15-2 first. The Debtor does not articulate a ground for his objection under Section 502(b) of the Bankruptcy Code. Instead, he argues the claim should be paid in this bankruptcy case in accordance with the terms of the Agreed Judgment and the confirmed plan. In arguing the terms of the Agreed Judgment control, the Debtor raised the issue of collateral estoppel. He further argued the terms of his confirmed plan are consistent with the terms of the Agreed Judgment and require the Adjudicated Arrearage to be paid during the bankruptcy case at the rate of $70.00 per month.

The Court will first review whether grounds exist under Section 502(b) to support the Debtor's objection. Next, the Court will consider the Debtor's argument that collateral estoppel precludes OCSE from filing Claim No. 15-2 as filed. Finally, the Court will determine the effect of the confirmed plan on the treatment of OCSE's claim.

### (1) Section 502(b)

In reviewing the exceptions found in Section 502(b), the only possible exception supporting the Debtor's argument is Section 502(b)(5), which provides for the disallowance of a claim for a domestic support obligation that is "unmatured on the date of the filing of the petition." 11 U.S.C. § 502(b)(5).[5] To the extent the Debtor argues the Adjudicated Arrearage, or a portion of it, is unmatured or not yet owing because the Agreed Judgment provided that the arrearage would be paid at the rate of $70.00 per month, his argument is misplaced.

The Bankruptcy Code's treatment of domestic support obligations differs depending on whether the obligation was due prepetition or whether it becomes due postpetition. *See Young v. Young (In re Young)*, 497 B.R. 904, 916 (Bankr. W.D. Ark. 2013). As it concerns prepetition domestic support obligations, Section 507(a)(1)(A) gives first priority status to:

> [a]llowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person . . . ."

11 U.S.C. § 507(a)(1)(A). A creditor may file a proof of claim for a prepetition domestic support obligation. *Young*, 497 B.R. at 917. In a chapter 13 case, the obligation must generally be paid

---

[5] The remaining exceptions found in Section 502(b) do not apply. Section 502(b)(1), which provides for the disallowance of claims that are unenforceable against the debtor, is inapplicable here as the Debtor acknowledges both that the claim is enforceable against him, and that it will survive the bankruptcy. The other grounds are similarly inapplicable. *See* 11 U.S.C. §§ 502(b)(2)–(4), (6)–(9) (disallowing claims for unmatured interest, certain taxes, services of an insider, damages resulting from termination of a lease, damages resulting from termination of an employment contract, employment taxes, and untimely filed claims).

in full over the life of the debtor's plan, unless the creditor agrees to different treatment.[6]

11 U.S.C. § 1322(a)(2); *see also Young*, 497 B.R. at 917–18.

Postpetition domestic support obligations are treated differently.  In a Chapter 13 case,

the Debtor must remain current on domestic support obligations that "first become[] payable

after the date of the filing of the petition," or his case may be converted or dismissed.  11 U.S.C.

§ 1307(c)(11).  A creditor may not file a proof of claim for a postpetition domestic support

obligation.  Such claims are disallowed under Section 502(b)(5).  *See, e.g., Young*, 497 B.R. at

917 ("Because postpetition domestic support obligations are not part of the debt owed as of the

date of the petition, such debts qualify as unmatured." (citing *Burnett v. Burnett (In re Burnett)*,

646 F.3d 575, 582 (8th Cir. 2011))); *see also Pawtucket Credit Union v. Haase (In re Haase)*,

306 B.R. 415, 419 (B.A.P. 1st Cir. 2004) (explaining that the word "unmatured" is not defined in

the Bankruptcy Code, but is often construed to mean "postpetition" (citing *IRS v. Cousins (In re

Cousins)*, 209 F.3d 38, 41 (1st Cir. 2000))); *McKinney v. McKinney (In re McKinney)*, 507 B.R.

534, 541 (Bankr. W.D. Pa. 2014) ("Postpetition domestic support obligations fall into the

category of 'unmatured' claims, because they are not due at the time the debtor files for

bankruptcy." (citing *Young*, 497 B.R. at 917)).

The Debtor's objection, therefore, will fit within the exception found in Section 502(b)(5)

if Claim No. 15-2 includes unmatured, postpetition domestic support obligations.  For the

reasons stated below, the Court finds that Claim No. 15-2 does not include unmatured,

---

[6] An exception is found in Section 1322(a)(4) for certain domestic support obligations that are entitled to priority under Section 507(a)(1)(B).  *See* 11 U.S.C. § 1322(a)(4).  Section 507(a)(1)(B) involves claims for domestic support obligations owed directly to a governmental unit or assigned to a governmental unit for purposes other than collection.  *See* 11 U.S.C. § 507(a)(1)(B).  The parties did not argue Section 507(a)(1)(B) applied to the claim of OCSE.  In addition, the Debtor listed "none" in the space for domestic support obligations assigned to, owed to, or recoverable by a governmental unit in his confirmed plan.  (Debtor's Ex. D).

postpetition domestic support obligations, but rather represents the balance owed on the Debtor's *prepetition* domestic support obligation.

First, Claim No. 15-2 is based on obligations owed by the Debtor as of the petition date. The claim is comprised of the Adjudicated Arrearage and Unadjudicated Arrearage, less amounts received by OCSE through postpetition garnishment. Both the Adjudicated Arrearage and Unadjudicated Arrearage were incurred prepetition. The Adjudicated Arrearage was established in the Agreed Judgment entered on July 2, 2019, and the Unadjudicated Arrearage was incurred between the time the Agreed Judgment was entered and the bankruptcy petition was filed.

In the Agreed Judgment, the state court specifically awarded Misty Price and OCSE a "Judgment in the amount of $15,478.00." (Debtor's Ex. C, ¶ 4). While the Agreed Judgment provided for a combined monthly payment amount of $420.00, the Adjudicated Arrearage did not become part of the Debtor's ongoing child support obligation. The monthly payment amount was clearly separated into two parts: one being the ongoing child support payment of $350.00, and the other constituting a $70.00 payment toward the Adjudicated Arrearage.

This is consistent with Arkansas law. Under Arkansas law, ongoing child support payments are treated differently than judgments for past due child support. An obligor's duty to pay child support can automatically terminate upon the occurrence of certain events, such as when the child reaches eighteen years of age (unless still in high school), is emancipated, marries, or dies. ARK. CODE ANN. § 9-14-237(a)(1) (2000 & Supp. 2021). An obligor's duty to satisfy any arrearages or child support obligations owed under a judgment, however, will generally remain regardless of the occurrence of one of these events. ARK. CODE ANN. § 9-14-235(a) (2020).[7] Both the terms of the Agreed Judgment and Arkansas law support a finding that

---

[7] In addition, under Arkansas law, past due child support may be paid in full in the event the obligor receives certain lump sum payments. ARK. CODE ANN. § 9-14-218(a)(1)(B) (2020).

the Adjudicated Arrearage did not become part of the ongoing child support obligation, but rather was a debt owed by the Debtor as of the petition date.

Second, Claim No. 15-2 is filed as an unsecured claim entitled to priority treatment under Section 507(a)(1) of the Bankruptcy Code, and the Debtor specifically acknowledges the claim is properly classified and is "entitled to priority treatment." (Tr. at 55). In essence, by agreeing to the priority classification under Section 507(a)(1), the Debtor acknowledges the debt is a *prepetition* debt for a domestic support obligation (i.e., Section 507(a)(1)(A) involves claims owed "as of the date of the filing of the petition"). 11 U.S.C. § 507(a)(1)(A).

Third, the fact that the Agreed Judgment allowed for payment of the Adjudicated Arrearage over time does not transform the debt from a prepetition obligation to an unmatured postpetition obligation. In the case of *In re Peterson*, No. 12-00793-8, 2012 WL 5985269, at *1 (Bankr. E.D.N.C. Nov. 29, 2012), the court dealt with this exact issue. There, the state court ordered the debtor to pay child support arrearages and other arrearages in monthly installments of $100.00. *Id.* at *1. When the debtor filed bankruptcy, he attempted to treat the arrearage claim as a long-term debt in his plan based on the state court order, and he also objected to his ex-wife's claim. *Id.* at *2. The court found that "[a]lthough the state court order permitted the debtor to pay these obligations over time, they each became a legally enforceable debt owed by the debtor to [his former spouse] on the date that the state court order was entered." *Id.* at *5. The court concluded, "They are, therefore, pre-petition claims and are allowable under 11 U.S.C. § 502(b)(5)." *Id.*

This Court agrees with the reasoning of the *Peterson* court and finds that the Adjudicated Arrearage was a legally enforceable debt owed by the Debtor prior to the bankruptcy filing,

notwithstanding the provision of the Agreed Judgment providing for payment of the Adjudicated Arrearage over time.

For these reasons, the Court finds the Adjudicated Arrearage is a prepetition debt. Because the debt was owed prepetition, Section 502(b)(5) cannot form a basis for the Debtor's objection to Claim No. 15-2.

### (2) Collateral Estoppel

The next question for the Court to address is whether the doctrine of collateral estoppel applies to Claim No. 15-2. The Debtor argued that under the doctrine of collateral estoppel, OCSE should be precluded from collecting more than $70.00 per month on the Adjudicated Arrearage because the $70.00 payment was agreed to and ordered by the state court.

In evaluating the Debtor's argument, the Court must look to Arkansas law. *See Hidy v. Bullard (In re Bullard)*, 449 B.R. 379, 384 (B.A.P. 8th Cir. 2011) ("The substantive law of the forum state applies to determine the collateral estoppel effect of a state court judgment."). Under Arkansas law, the doctrine of collateral estoppel "bars relitigation of issues of law or fact previously litigated by a party." *Johnson v. Union Pac. R.R.*, 104 S.W.3d 745, 750 (Ark. 2003) (citing *Palmer v. Ark. Council on Econ. Educ.*, 40 S.W.3d 784, 789 (Ark. 2001); *Zinger v. Terrell*, 985 S.W.2d 737, 741 (Ark. 1999)). The elements of collateral estoppel are as follows:

> (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment.

*Id.* at 750 (citing *Palmer*, 40 S.W.3d at 790; *Zinger*, 985 S.W.2d at 741). The party asserting collateral estoppel bears the burden of proof as to its elements. *Bullard*, 449 B.R. at 384–85 (citing *First Sec. Bank v. Hudson (In re Hudson)*, 428 B.R. 866, 869 (Bankr. E.D. Ark. 2010)).

13

The evidence supporting the Debtor's collateral estoppel argument is sparse. The Agreed Judgment was introduced into evidence, as was the prior order dated November 14, 2016, establishing paternity and support. No other state court pleadings or orders were introduced, nor was a transcript from any state court proceeding introduced. While the Debtor testified at the hearing that he entered into an agreement in the form of the Agreed Judgment, no testimony was given about the nature of the state court proceeding surrounding entry of the Agreed Judgment, or how the Agreed Judgment came into existence.

In reviewing the record, the Court finds that the Debtor failed to meet his burden of proving collateral estoppel. As to the first element, "the issues litigated in the first case must be the same as in the later case." *Hudson*, 428 B.R. at 869. The Agreed Judgment did provide that the Debtor should pay an additional $70.00 per month toward the Adjudicated Arrearage. However, the Agreed Judgment also provided for other methods of payment, including allowing a deduction for up to the full amount of the judgment from any lump-sum payment the Debtor may receive. To the extent the Debtor argues the parties are bound by the $70.00 per month payment terms, that argument is unsupported by the evidence. At the hearing, the Debtor stated that the issue before this Court concerned the amount OCSE is "entitled to collect during the 60-month bankruptcy plan." (Tr. at 5). Certainly, the amount the Debtor must pay in his plan on this prepetition arrearage claim was not the issue before the state court. The Court finds the Debtor failed to meet his burden of proof as to the first element of collateral estoppel.

Even if the Court were to assume the issues are the same, the Debtor also failed to prove the fourth element of collateral estoppel. The fourth element requires a finding that the determination of the issue was essential to the judgment. "Collateral estoppel applies only to determinations that are necessary to support the judgment entered in the first action."

14

*Countrywide Home Loans, Inc. v. Blair (In re Blair)*, 324 B.R. 725, 731 (Bankr. W.D. Ark. 2005) (citing *Dowden v. Hogan (In re Hogan)*, 214 B.R. 1022, 1023–24 (Bankr. E.D. Ark. 1997)).  Stated another way, "[c]ollateral estoppel does not preclude litigation of previously decided issues unless the prior judgment could not have been rendered absent a conclusive finding as to the particular issue."  *Hudson*, 428 B.R. at 870 (citing *Beaver v. John Q. Hammons Hotels, L.P.*, 138 S.W.3d 664, 670 (Ark. 2003)).  Here, the Debtor has failed to prove that the award of the Adjudicated Arrearage could not have been made absent the determination of how that arrearage amount would be paid.  The record is devoid of facts showing how the Agreed Judgment came into existence, but it seems most logical to this Court that the Adjudicated Arrearage was determined, and *then* a provision was included stating how the arrearage should be paid by the Debtor.  In any event, the Debtor failed to meet his burden of proving that the issue of how the judgment would be paid was essential to the judgment itself.

For all of these reasons, the Court finds that the Debtor's collateral estoppel argument must fail.  OCSE is not barred by the doctrine of collateral estoppel from filing Claim No. 15-2 as filed.

At the hearing, the Debtor also argued that the entry of the Agreed Judgment constituted an agreement on the Part of OCSE to accept less than full payment of its claim pursuant to Section 1322(a)(2).  This argument fails for two reasons.  First, the Agreed Judgment was entered into eight months *before* the Debtor filed his chapter 13 petition.  The Debtor does not explain how this prepetition agreement, which states how the Adjudicated Arrearage would be paid outside of bankruptcy, constitutes an express agreement on how the arrearage would be paid in a later-filed chapter 13 bankruptcy case.  *See In re Northrup*, 141 B.R. 171, 173 (N.D. Iowa 1991) ("[A]n express affirmation of consent is required to meet the requirements to 11 U.S.C. §

15

1322(a)(2).").  Second, because the Debtor's plan has been confirmed, the provisions of Section

1322(a)(2) are no longer applicable.  Instead, the provisions of Section 1327 govern.  *Burnett*,

646 F.3d at 581.  Pursuant to this section, the Court must look to the terms of the confirmed plan

to determine how the arrearage will be paid during the life of the Debtor's case.

### (3)  Effect of the Confirmed Plan

The final issue the Court must analyze concerning Claim No. 15-2 is the effect the

confirmed plan has on this claim.  The Debtor argues the confirmed plan provided for payment

of the Adjudicated Arrearage at the rate of $70.00 per month for the life of the plan. OCSE

responds that the confirmed plan provided that the amount listed on the allowed proof of claim

controls, and, therefore, the confirmed plan provides for payment of the full amount of Claim

No. 15-2.

"The provisions of a confirmed plan bind the debtor and each creditor, whether or not the

claim of such creditor is provided for by the plan, and whether or not such creditor has objected

to, has accepted, or has rejected the plan."  11 U.S.C. § 1327(a).  "An unappealed, confirmed

plan is *res judicata*, and its terms are not subject to collateral attack."  *Russell v. Transport

Funding LLC (In re Russell)*, 386 B.R. 229, 231 (B.A.P. 8th Cir. 2008) (citing *Simpson v.

Simpson (In re Simpson)*, 240 B.R. 559, 561 (8th Cir. B.A.P. 1999); 8 COLLIER ON

BANKRUPTCY ¶ 1327.02[1] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed.)).  "[O]nce

final, the plan essentially has a res judicata effect, and it 'represents a binding determination of

the rights and liabilities of the parties as ordained by the plan.'"  *Smith v. Rushmore Loan Mgmt.

Servs., LLC (In re Smith)*, 575 B.R. 869, 876 (Bankr. W.D. Ark. 2017) (quoting 8 COLLIER ON

BANKRUPTCY ¶ 1327.01 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.)).  The terms of a

confirmed plan are binding, even if they conflict with other provisions of the Bankruptcy Code. *Burnett*, 646 F.3d at 581.

Importantly, for the terms of a confirmed plan to be binding, the creditor must receive sufficient notice of the plan's treatment of its claim. *In re Ramey*, 301 B.R. 534, 545 (Bankr. E.D. Ark. 2003) ("The principles of *res judicata* should be applied except in cases where the notice to the creditor of the plan treatment of the lien is so insufficient that it violates due process of law."). "When the plan's treatment of a creditor is ambiguous or lacks specificity, an issue relating to notice can arise." *Smith*, 575 B.R. at 878.

Confirmed plans are interpreted under the state law governing contracts. *Schellhorn v. Farmers Sav. Bank (In re Schellhorn)*, 280 B.R. 847, 853 (Bankr. N.D. Iowa 2002). Under Arkansas law, "when contracting parties express their intention in a written instrument in clear and unambiguous language, the written agreement is enforced according to the plain meaning of the language employed." *Stone v. Metropolitan Life Ins. Co.*, 184 F. App'x 584, 585 (8th Cir. 2006) (citing *C. & A. Constr. Co. v. Benning Constr. Co.*, 509 S.W.2d 302, 303 (Ark. 1974)). Ambiguity exists in a contract if "a provision is susceptible to more than one reasonable interpretation." *Id.* (quoting *State Farm Fire & Cas. Co. v. Midgett*, 892 S.W.2d 469, 471 (Ark. 1995)). If a contract contains uncertainties or ambiguities, it is construed against the drafter. *Id.* at 586 (quoting *Elcare, Inc. v. Gocio*, 593 S.W.2d 159, 161 (Ark. 1980)); *see also Price v. Willbanks*, 2009 Ark. App. 849, at 6, 374 S.W.3d 28, 32 ("[O]ur laws require that if uncertainty or ambiguity exists within the terms of a contract, or if it is susceptible to more than one reasonable construction, then the courts must construe the contract most strongly against the party who drafted it." (citing *Elcare, Inc.*, 593 S.W.2d at 161)).

In the case at bar, the Debtor's confirmed plan provides in Section 4.1 that "all allowed priority claims, including domestic support obligations, will be paid in full." (Debtor's Ex. D). In Section 4.5, in the space provided for listing the name and address of the holder of a domestic support obligation, the Debtor listed OCSE in three separate boxes and included an explanation in one box that the Adjudicated Arrearage is "being paid with debtor's current obligation at the rate of $70.00 per month per Agreed Judgment" and in another box that the current obligation is "$350/month plus $70/month to be applied to adjudicated arrears per Agreed Judgment." (Debtor's Ex. D). The Debtor then proposes to pay $420.00 per month as his continuing domestic support obligation payment. In the portion of Section 4.5 governing domestic support obligation arrearages, the plan provides that "[u]nless otherwise ordered by the court, the arrearage claim amount listed on the filed and allowed proof of claim will control over the total estimated arrearage amount listed below." (Debtor's Ex. D). Below this statement, the Debtor listed $960.00 as the total estimated arrearage amount.

The language providing that the claim amount will control is found in the form Arkansas Chapter 13 Plan, Local Form 13-1, which is required to be used in all cases filed on or after December 1, 2017. *See* Bankr. E. & W. Dist. of Ark. L.R. 3015-1(a). This form language is similar to form language found in the national chapter 13 plan regarding mortgage arrearages. Courts have relied on this form language to find the claim amount controls over a contrary amount listed in a plan. *See In re Simon*, 606 B.R. 695, 699 (Bankr. W.D. La. 2019) ("Although the confirmed plan undoubtedly has a *res judicata* effect, it does not preclude or limit the amount of the Claim because the plan expressly provides that 'unless otherwise ordered by the court, the claim amount listed on the proof of claim controls over any contrary amount for claim listed' in

the plan."); *see also In re Maldonado*, No. 19-30177, 2019 WL 4410070, at *1 (Bankr. N.D.N.Y. Aug. 6, 2019).

In reviewing the plan as a whole, the Court understands, but cannot agree with, the Debtor's position.  The Debtor's position ignores the language in Section 4.1 that all priority claims, including domestic support obligations, will be paid in full.  It also ignores the specific language in Section 4.5 that the amount listed on the filed and allowed proof of claim controls. Moreover, the language explaining the $70.00 monthly payment toward the Adjudicated Arrearage is found in the section of the form plan where the Debtor is instructed to list the "name(s) and address(es) of the holder of any domestic support obligation."  (Debtor's Ex. D). While the Debtor may have intended to pay only $70.00 per month toward the Adjudicated Arrearage, the plan does not provide that this will be the *only* amount paid toward the arrearage. This is especially true when read in conjunction with the other provisions of the plan.  In reviewing the entirety of plan, the plan lacks the requisite specificity to support the Debtor's argument.  *See Smith*, 575 B.R. at 875 (sustaining objection to claim that was contrary to "clear and specific" terms of a confirmed plan).

The Court finds the Debtor has failed to meet his burden of proving that grounds exist to disallow Claim No. 15-2.  The claim must be allowed.  Pursuant to the terms of the confirmed plan, the amount listed on the filed and allowed proof of claim controls.[8]  Therefore, the Court finds that the confirmed plan provides for payment in full of the Debtor's prepetition domestic support obligation, as listed on Claim No. 15-2.

---

[8] Although the plan language provides that the claim amount controls, because the arrearage amount in the proof of claim was so significantly more than the arrearage amount proposed to be paid in the Debtor's plan, it would have been prudent for OCSE to have objected to its plan treatment.

At the hearing, the parties did not directly argue that the plan was ambiguous, although they certainly disagreed over its effect. To the extent the plan is subject to more than one reasonable interpretation, the Court's ruling remains as the Court is required to construe the plan's terms against the Debtor as drafter. *Stone*, 184 Fed. App'x at 586. In addition, the Court's ruling is further supported by the principle that plan language should be interpreted to "comply with, not violate, the Code." *Meredith v. BMW Fin. Servs. NA, LLC (In re Burnsed)*, No. 19-41654, 2021 WL 3013300, at *11 (Bankr. S.D. Ga. July 15, 2021) (quoting *In re Hamilton*, No. 14-10665, 2017 WL 1533382, at *4 (Bankr. D.N.M. April 27, 2017)). Interpreting the confirmed plan to provide for full payment of the Debtor's prepetition domestic support obligation comports with other provisions of the Bankruptcy Code; allowing the Debtor to treat it as a long-term debt does not. *See Peterson*, 2012 WL 5985269, at *5.

For all the reasons stated above, the Court finds that Claim No. 15-2 represents a prepetition debt owed by the Debtor for a domestic support obligation. The Debtor has not met his burden of proving that the claim should be disallowed under Section 502(b), under the doctrine of collateral estoppel, or based on the terms of the confirmed plan. The claim is therefore allowed as a priority claim in the amount of $13,595.41 and must be paid in full during the term of the plan. The Debtor's Limited Objection as to Claim No. 15-2 is overruled.

### B. Objection to Claim No. 16-1

The Court will next take up the objection to Claim No. 16-1. Claim No. 16-1 was filed to represent the Debtor's ongoing, postpetition domestic support obligation. It was filed in the amount of $21,000.00, which represents the $350.00 monthly support payment for the sixty-month term of the plan. The Debtor acknowledges that the amount listed in the proof of claim is an accurate reflection of his ongoing child support payment of $350.00 per month, but he objects

20

to the claim as untimely filed and argues this claim, in conjunction with Claim 15-2, creates confusion about what is to be paid to OCSE in this case.

OCSE argued that Claim 16-1 was filed "to clarify some confusion with the Trustee's office." (Tr. at 62). No testimony or other evidence was introduced explaining the reasoning or basis behind filing this claim.

The Debtor is correct that Claim No. 16-1 was untimely filed. The proof of claim was filed on December 18, 2020, well past claims bar date. It should be disallowed pursuant to Section 502(b)(9). 11 U.S.C. § 502(b)(9) (disallowing untimely filed claims); *see also In re Alsofari*, 588 B.R. 58, 71 (Bankr. E.D. Ark. 2017) (disallowing a late-filed claim).

But more significantly, as detailed above, the Bankruptcy Code and case law are clear that claims for *postpetition* domestic support obligations are inherently improper and should be disallowed under Section 502(b)(5) regardless of their timeliness. *See,* 11 U.S.C. § 502(b)(5); *Young*, 497 B.R. at 917 ("[T]he Code does not even permit the filing of a proof of claim for postpetition domestic support obligations."). The claim should be disallowed for this reason as well.

For these reasons, the Court finds that Claim No. 16-1 should be disallowed under Section 502(b)(9) and Section 502(b)(5). The Debtor's Limited Objection as to Claim No. 16-1 is sustained.

## V. Conclusion

Based on the facts of this case and the evidence presented by the parties, the Court finds that Claim No. 15-2 represents a prepetition debt owed by the Debtor for child support arrearages. The claim is allowable under Section 502(b)(5). OCSE is not barred by the doctrine of collateral estoppel from filing Claim No. 15-2 in the full amount of the prepetition debt, and

the claim does not conflict with the terms of the confirmed plan. The Debtor's objection to Claim No. 15-2 is overruled and Claim No. 15-2 is allowed as filed. Pursuant to the terms of the confirmed plan, the claim is to be paid in full over the life of the plan.

Claim No. 16-1 represents the Debtor's ongoing, postpetition child support obligation. The claim was untimely filed, but is also inherently improper as a claim for an unmatured domestic support obligation. It is disallowed under Section 502(b)(9) and (b)(5). The Debtor's objection to Claim No. 16-1 is sustained.

**IT IS SO ORDERED.**

Phyllis M. Jones
United States Bankruptcy Judge
Dated:  10/01/2021